Richard Morin (SBN 285275)
Law Office of Rick Morin, PC
500 Newport Center Drive Suite 610
Newport Beach, CA 92660
Phone: (949) 996-3094
Email: legal@rickmorin.net

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Melanie June Wilson, | Case No. |
| Plaintiff, | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| v. | |
| Bel-Air Swap-Meet, Inc., | **Jury Trial Demanded** |
| Defendant. | |

Melanie June Wilson ("Plaintiff") alleges the following:

## INTRODUCTION

Plaintiff brings this action against Bel-Air Swap-Meet, Inc. ("Defendant") for unlawfully and intentionally discriminating against Plaintiff because of Plaintiff's disability and denying Plaintiff equal access to its Bel-Air Swap Meet located at 17565 Valley Boulevard in Fontana, California.

## PARTIES

1.      Plaintiff is a natural person. At all times relevant to this Complaint, Plaintiff is and has been considered disabled.

2.      Defendant is a California corporation with its principal place of business in Bloomington, California.

3.      At all times relevant to this complaint, Defendant owned and operated the Bel-Air Swap Meet located at 7600 Irwin Avenue in in Palermo, California. ("Bel-Air Swap Meet").

//

**JURISDICTION AND VENUE**

4.      The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, et seq.

5.      Pursuant to supplemental jurisdiction, 28 U.S.C. § 1367, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California state law.

6.      Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the Bel-Air Swap Meet is in this district and Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS**

7.      Plaintiff suffers from a disability, and/or medical condition that is a disability.

8.      Plaintiff suffers from Post-Traumatic Stress Disorder. Plaintiff has active and on-going symptoms.

9.      Plaintiff's symptoms limit, some substantially, Plaintiff's major life activities.

10.     Plaintiff utilizes a service dog to help address the challenges resulting from Plaintiff's disability, which Plaintiff deals with on a daily basis.

11.     Plaintiff's service dog is trained in specific tasks to assist Plaintiff and ameliorate the symptoms of Plaintiff's disability, including, but not limited to, detect and alert Plaintiff of oncoming panic attacks and provide calming pressure and grounding. Without her service dog, it would be very difficult for Plaintiff to participate in everyday life.

12.     On or about August 7, 2022 Plaintiff visited the Bel-Air Swap Meet with her service dog.

13.     It was very hot that day, with the temperature exceeding 100 degrees when Plaintiff arrived at the Swap Meet with her service dog.

14.     As Plaintiff went to enter the Bel-Air Swap Meet, she was approached by employees of the Bel-Air Swap Meet. The employees denied Plaintiff access because of the presence of her service dog.

15.     Specifically, the employees told Plaintiff that her service dog needed to be always

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

leashed and on the ground. Plaintiff refused to put her service animal on the hot blacktop in fear of her service dog's safety given the extremely high temperature that day.

16.     Plaintiff pleaded with several employees at the Bel-Air Swap Meet to no avail.

17.     Plaintiff even attempted to call the management at the Bel-Air Swap Meet from the parking lot. On Plaintiff's first phone call, a purported Bel-Air Swap Meet manager took the call and then hung up the phone on Plaintiff. Plaintiff called back and was ultimately able to speak with someone named David who Plaintiff believes worked in the security department at the Bel-Air Swap Meet. David confirmed that unless Plaintiff's animal was walking on the ground, the service animal would not be allowed into the Bel-Air Swap Meet.

18.     Because Defendant refused to accommodate her disability and service animal, Plaintiff then left the Bel-Air Swap Meet.

19.     Plaintiff is substantially deterred from returning to, although she would like to return to, the Bel-Air Swap Meet because there is substantial probably that Plaintiff will be discriminated against because of disability and service dog.

### **FIRST CAUSE OF ACTION**

Violations of the Americans with Disabilities Act

42 U.S.C. § 12101, et seq.

20.     Plaintiff hereby incorporates the previous paragraphs as if they had been fully stated herein.

21.     Title III of the ADA bans disability discrimination against an individual in places of public accommodation. The ADA states that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

22.     The Bel-Air Swap Meet is a public accommodation.

23.     The Bel-Air Swap Meet is a place of public gathering and/or sales establishment, like a shopping center, that affects commerce.

24.     The ADA prohibits, among other types of discrimination, failure to make reasonable

modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.

25.     Defendant has a policy that restricts and denies access to disabled patrons like Plaintiff.

26.     Defendant's conduct knowingly and willfully excluded Plaintiff from equal access to their public accommodation.

27.     As a result of Defendant's conduct, denying Plaintiff equal access to the Bel-Air Swap Meet, Plaintiff faces continuing discrimination. Plaintiff continues to suffer denial of access and faces the prospect of unpleasant and discriminatory treatment should Plaintiff attempt to return to the Bel-Air Swap Meet.

28.     It is readily achievable for Defendant to provide Plaintiff and other disabled people like Plaintiff full and equal access to the Bel-Air Swap Meet.

29.     Defendant does not have any legitimate business justification to excuse the denial of Plaintiff's equal access.

30.     Plaintiff seeks relief pursuant to remedies set forth in section 204(a) of the Civil Rights Act of 1964 (42 USC 2000(a)-3(a)), and pursuant to Federal Regulations adopted to implement the Americans with Disabilities Act of 1990. Plaintiff is a qualified disabled person for purposes of the ADA who is being subjected to discrimination on the basis of disability in violation of Title III and who has reasonable grounds for believing Plaintiff will be subjected to such discrimination each time that Plaintiff may use the property and premises, or attempt to patronize the Bel-Air Swap Meet, in light of Defendant's conduct.

31.     Defendant's acts have proximately caused and will continue to cause irreparable injury to Plaintiff if not enjoined by this Court.

32.     Plaintiff seeks injunctive relief as to Defendant's inaccessible policies. Plaintiff seeks preliminary and permanent injunctive relief to enjoin and eliminate the discriminatory practices that deny full and equal access for disabled persons. Further, Plaintiff seeks an award of reasonable statutory attorney fees, litigation expenses, and costs.

//

## SECOND CAUSE OF ACTION

Denial of Full and Equal Access to Public Facilities in a Public Accommodation

Civ. Code §§ 54 *et seq.*

33.     Plaintiff incorporates all prior paragraphs as if fully stated herein.

34.     The Bel-Air Swap Meet is a public accommodation that Defendant owns and operates.

35.     Defendant denied and interfered with Plaintiff's ability to access the Bel-Air Swap Meet.

36.     Plaintiff prays for injunctive relief that prohibits the acts complained of herein, which have the effect of wrongfully excluding Plaintiff and other members of the public who are disabled from full and equal access to these public facilities. Such acts and omissions are the cause of mental and emotional suffering for Plaintiff.

37.     Plaintiff wishes to return to patronize the Bel-Air Swap Meet but is substantially deterred from returning to use these facilities and services, because the lack of access and the significant policy barriers will foreseeably cause Plaintiff further difficulty, discomfort and embarrassment, and Plaintiff is unable, so long as such acts and omissions of Defendant continues, to achieve equal access to and use of these public facilities.

38.     Plaintiff seeks injunctive relief as to Defendant's inaccessible policies. Plaintiff seeks preliminary and permanent injunctive relief to enjoin and eliminate the discriminatory practices that deny full and equal access for disabled persons, and seeks an award of reasonable statutory attorney fees, litigation expenses and costs.

39.     As a result of the denial of full and equal access to the described facilities and due to the acts and omissions of Defendant in owning and operating the Bel-Air Swap Meet, Plaintiff has suffered a violation of Plaintiff's civil rights, including but not limited to rights under Civil Code sections 54 and 54.1, and has suffered difficulty, discomfort and embarrassment, and physical, mental, and emotional personal injuries.

40.     Defendant's actions and omissions to act constitute discrimination against Plaintiff on the basis that Plaintiff was and is disabled and unable, because of the policy barriers created and/or maintained by the Defendant in violation of the subject laws, to use the facilities on a full and equal

basis as other persons.

41.     Plaintiff has been damaged by Defendant's wrongful conduct.

42.     At all times herein mentioned, Defendant was fully aware that significant numbers of potential users of the public facilities were, are, and will be disabled persons, and would have need of facilities that complied with California Title 24 and ADA Standards for Accessible Design standards for accessible facilities.

43.     Despite this knowledge, Defendant installed and maintained the policy barriers complained of, have failed to remove these unlawful policies, and have failed to provide and maintain properly accessible facilities, including but not limited to those previously noted hereinabove, as required by state and federal law.

44.     Plaintiff believes Defendant has ignored complaints about the lack of proper disabled access by other disabled persons.

45.     Defendant has continued its illegal and discriminatory practices despite actual knowledge that persons with disabilities may attempt to patronize the Bel-Air Swap Meet and encounter illegal policy barriers which deny them full and equal access when they do so.

46.     At all times herein mentioned, Defendant knew, or in the exercise of reasonable diligence should have known, that its practices at the Bel-Air Swap Meet violated disabled access requirements and standards, and would have a discriminatory effect upon Plaintiff and upon other disabled persons, but Defendant has failed to rectify the violations, and presently continue a course of conduct of maintaining policy barriers that discriminate against Plaintiff and similarly situated disabled persons. Plaintiff alleges that an award of statutory treble damages is appropriate.

47.     Further, although it is not necessary for Plaintiff to prove wrongful intent in order to show a violation of California Civil Code sections 54 and 54.1 or of Title III of the ADA, Defendant's behavior was intentional. Plaintiff believes Defendant was aware and/or were made aware of its duties to refrain from establishing discriminatory policies against disabled persons, prior to the filing of this complaint. Defendant's establishment of their discriminatory policy denying access to disabled persons to safely have full and equal access to the Bel-Air Swap Meet, and their implementation of such a discriminatory policy against Plaintiff, indicate actual and implied malice toward Plaintiff and

conscious disregard for Plaintiff's rights.

48.     Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses, and costs. Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

49.     Plaintiff suffered damages as described as a result of Defendant's violations. Damages are ongoing. Plaintiff remains hesitant and apprehensive about returning to the Bel-Air Swap Meet. Plaintiff seeks the relief that is afforded by Civil Code sections 54, 54.1, and 54.3, including treble damages.

### THIRD CAUSE OF ACTION

Violations of the Unruh Civil Rights Act

California Civil Code §§ 51-53

50.     Plaintiff hereby incorporates the previous paragraphs as if they had been fully stated herein.

51.     Defendant intentionally discriminated against Plaintiff, denying Plaintiff full and equal access to the Bel-Air Swap Meet.

52.     The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code 51(f).

53.     Defendant's acts and omissions as specified with regard to the discriminatory treatment of Plaintiff, on the basis of Plaintiff's disabilities, have been in violation of California Civil Code §§ 51 and 51.5, the Unruh Civil Rights Act, and have denied to Plaintiff's right to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

54.     Plaintiff was harmed.

55.     Defendant's conduct was a substantial factor in causing Plaintiff's harm.

56.     As a result of the violation of Plaintiffs civil rights protected by California Civil Code §§ 51 and 51.5, Plaintiff is entitled to the rights and remedies of California Civil Code § 52, including

LAW OFFICE OF
RICK MORIN

a trebling of actual damages, minimum statutory damages, as well as reasonable attorneys' fees and costs, as allowed by statute, according to proof.

57.     Plaintiff also seeks to enjoin Defendant from violating disabled persons' rights.

## PRAYER

Plaintiff hereby prays for the following:

1.     Injunctive relief compelling Defendant to cease its discrimination of disabled persons and remove all accessibility policy barriers that relate to Plaintiff's disability;

2.     Damages including actual damages and at least a statutory minimum of $4,000 for each offense;

3.     Attorney's fees pursuant to 42 U.S.C. 12205, Civil Code sections 52, 54,Code of Civil Procedure section 1021.5, and/or other statute(s), expenses, and costs of suit;

4.     Other relief that the court deems appropriate.

Dated: September 8, 2022                    Law Office of Rick Morin, PC

_____

Richard Morin
Attorney for Plaintiff

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF